**Carmen ALVERIO, Plaintiff,**

v.

**SAM'S WAREHOUSE CLUB, Defendant.**

No. 97 C 3726.

United States District Court,
N.D. Illinois,
Eastern Division.

July 2, 1998.

John P. DeRose, John P. DeRose and Associates, Burr Ridge, IL, for Plaintiff.

William J. Holloway, James Patrick Hanlon, Hinshaw & Culbertson, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Sam's Warehouse Club's motion for summary judgment. For the reasons that follow, the court grants in part and denies in part defendant's motion.

### I. BACKGROUND [1]

Plaintiff Carmen Alverio ("Alverio") worked for defendant Sam's Warehouse Club ("Sam's") from 1992 to September 25, 1996. She worked in the demonstration department. When she started with Sam's, Alverio worked at the Northlake location. She later was transferred to the Des Plaines location.

While Alverio was working at the Northlake location, she claims that another Sam's employee, Terrence Lloyd ("Lloyd"), sexually harassed her on a number of occasions. Lloyd was an assistant manager at Sam's.

---

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) statements. *See infra* Part II.B (explaining how the court determined the facts).

Alverio told Lloyd that his conduct made her uncomfortable. Alverio also told her immediate supervisor, Patricia Zemaitis ("Zemaitis"), about Lloyd's harassing conduct. Alverio did not tell anyone else at the Northlake store about Lloyd's conduct. Zemaitis did not tell anyone at the Northlake store about Lloyd's alleged harassment of Alverio; rather, she simply told Alverio that they would have to wait to see if Lloyd did anything else.

Sometime between 1992 and 1995, Alverio was transferred to the Sam's in Des Plaines. Sandy Hixon ("Hixon") was the general manager of the Des Plaines Sam's. Shortly after Alverio started working at the Des Plaines Sam's, Zemaitis transferred to that store and once again became Alverio's immediate supervisor.

Lloyd was also transferred from the Northlake Sam's to the Des Plaines Sam's. Alverio claims that after Lloyd transferred to the Des Plaines Sam's, Lloyd again began harassing her. Alverio again discussed Lloyd's conduct with Zemaitis. Zemaitis again told Alverio that she should wait until he does something else. Alverio did not report Lloyd's conduct to anyone in a position higher than Zemaitis.

Lloyd's allegedly harassing treatment of Alverio continued until one day in July of 1995. On that day, Alverio and Lloyd were working at the Des Plaines Sam's. Lloyd called Alverio into the supervisor's office because he believed that she was making telephone calls on company time and he intended to reprimand her about this. After he had called her into the office, he discovered that he was wrong. Alverio went back to work. She went into the demonstration room and was washing dishes. Lloyd went into the room with her. There was no one else in the demonstration room. Alverio and Lloyd have different accounts of what occurred in the demonstration room at that time.

Sam's version of what occurred in the demonstration room is as follows: Lloyd went into the demonstration room and apologized to Alverio. As a good gesture, he decided to help her wash dishes. While they were washing dishes, Lloyd handed Alverio a knife. Lloyd was holding the knife by the

handle and the blade. As he handed her the knife, Lloyd asked her whether she was going to have the Mafia kill him. Alverio responded that Lloyd had better be careful because a Puerto Rican knows how to use a knife. After Alverio's comment, Lloyd and Alverio both grinned.

Alverio's version of what occurred in the demonstration room is as follows: Lloyd did not come into the demonstration room and either help her wash dishes or apologize to her. Lloyd came into the demonstration room and grabbed a knife and said something about the Mafia. Lloyd then touched her stomach with the tip of the knife and dragged it across her stomach. Alverio never said that he had better be careful because a Puerto Rican knows how to use a knife or grinned or found any humor during the knife incident in any way.

Alverio did not report the knife incident to anyone before leaving work that day. Instead, she told her son, who is a Chicago police officer, about the incident later that night. Her son reported the incident to the police. The police arrested Lloyd the next day, after which Sam's immediately suspended him.

When Hixon learned that Lloyd was being arrested, she came to the store to conduct an investigation. Bob Crumb ("Crumb"), the loss prevention supervisor, also arrived to assist Hixon with her investigation. Hixon and Crumb interviewed Zemaitis. Zemaitis told Hixon and Crumb that Lloyd had made improper sexual advances toward Alverio in the past. Hixon testified at her deposition that Zemaitis told them that she did not report Lloyd's allegedly harassing conduct before because she did not feel that it was important enough. (Hixon. Dep. at 27.) Zemaitis testified at her deposition that she did not report Lloyd's conduct because she was afraid of that she might suffer an adverse employment action. (Zemaitis Dep. at 34.)

Hixon only spoke one time with Alverio about the knife incident. (Hixon Dep. at 32.) Hixon asked Alverio to make a written statement. (*Id.* at 44.) Hixon told Alverio that the courts would handle the situation. Hixon did not ask Lloyd to make a written state-

ment as Lloyd was suspended and Hixon had no access to him. (*Id.*)

After the knife incident, Alverio took a couple of weeks off. On September 14, 1995, Alverio filed a charge of sexual harassment with the Equal Employment Opportunity Commission ("the EEOC") against Sam's. Alverio continued to work at the Des Plaines Sam's. After the knife incident, employees at Sam's, including Hixon and other supervisors, would not talk to Alverio. Alverio discussed this with Hixon, who told her that in time it would pass.

Sometime before Lloyd's criminal trial, Hixon called Zemaitis into the receiving office. Hixon asked Zemaitis if she was going to the courtroom to the proceedings. Zemaitis said she was not sure if she was. (Zemaitis Dep. at 63.) Zemaitis had not been subpoenaed to testify at the trial, but Alverio had asked Zemaitis to go to see if she could testify. (*Id.*) Hixon told Zemaitis that if she were to go to the trial, "things are going to be really difficult for you here when you get back ... and I wouldn't suggest going." (*Id.*) Zemaitis took that statement as a threat. (*Id.*)

Lloyd was acquitted of the charges against him. (*See* Trial Tr. of *People v. Lloyd* at 118.) After the trial, Hixon called Alverio into her office. (Hixon Dep. at 48; Alverio Dep. at 48.) Hixon apologized to Alverio for her indifference to her. (Hixon Dep. at 48.) She also applauded Alverio for having continued to work at Sam's even though she had been treated poorly by others after the knife incident. (Hixon Dep. at 48–49; Alverio Dep. at 48.)

Alverio continued to work for Sam's until Hixon fired Alverio in September of 1996. Alverio was told she was fired because of her involvement in an incident that occurred on September 25, 1996. On that day, Mike DiVincenzo ("DiVincenzo"), a cash operator supervisor at the Des Plaines Sam's, was su-

pervising the front end of the store. DiVincenzo was called over to a cash register because someone was purchasing Code 2 merchandise[2] and a cash operator supervisor has to physically override the system in order to sell Code 2 merchandise. DiVincenzo overrode the system. After doing so, he realized that it was Alverio who was purchasing the merchandise. He told her that she could not purchase the Code 2 merchandise. Alverio then argued with DiVincenzo about whether she could purchase the merchandise. (Def.'s 12(M) Statement ¶ 32; Alverio Dep. at 54.) DiVincenzo then tried to pull Alverio's cart out of the aisle so that the dispute could be settled at the refund counter because a line was beginning to form behind Alverio. As DiVincenzo attempted to move Alverio's cart, Alverio refused to leave and told him that she would not leave until the situation was rectified.

The parties dispute what happened next. According to Sam's, as DiVincenzo attempted to move Alverio's cart, Alverio struck him with her fist three times on the back of his hand and called him an "asshole." According to Alverio, she did not strike DiVincenzo with her fist; rather, she "tapped" his hand because she wanted him to take it off her cart since it contained her purse, checkbook and coat. Alverio admits that she argued with DiVincenzo and that she was nervous and upset during the incident. (Alverio Dep. at 54–56.) However, Alverio denies calling DiVincenzo an "asshole"; rather, Alverio claims that it was DiVincenzo who threatened her by saying that he was going to fire her.

At this point, DiVincenzo paged Matt Montello ("Montello"), the operations manager, to the refund desk to rectify the situation. Alverio first told Montello that she had not struck DiVincenzo, but then later admitted that she struck DiVincenzo several times attempting to remove his hands from her cart. (Montello Dep. ¶¶ 7–8.)[3] Montello then rang

**2.** Code 2 merchandise is merchandise that is somehow damaged and is sold at a discount. Sam's employees are not allowed to purchase Code 2 merchandise.

**3.** In its Rule 12(M) Statement, Sam's states that Alverio told Montello that she struck DiVincenzo several times in an attempt to remove his hands

from her cart. (Def.'s 12(M) Statement ¶ 39.) In her Rule 12(N) statement, Alverio denies that she told Montello that she struck DiVincenzo several times. (Pl.'s 12(N) Statement ¶ 39.) However, her cite to the record does not support that denial. (*See* Alverio Dep. at 51–57.) There is nothing in the submitted portion of the deposition that discusses what she did or did not say to

up Alverio's purchases, excluding the Code 2 merchandise. (Alverio Dep. at 56.)

Shortly after the above incident had occurred, Hixon conducted an investigation into the incident. In addition to others, Hixon spoke with Alverio.[4] After conducting her investigation and speaking with Alverio, Hixon fired Alverio for physical and verbal abuse of a co-worker.

After she was fired, Alverio filed another charge of discrimination with the EEOC. In this second charge, Alverio alleged that she was fired in retaliation for filing the first charge of discrimination. (Compl.Ex. C.)

Based on the above events, Alverio is pursuing two claims against Sam's in this lawsuit. Her first claim is a claim under Title VII for sexual harassment. Her second is a claim under Title VII for retaliation.

This matter is currently before the court on Sam's motion for summary judgment. Sam's argues that it is entitled to judgment on (1) Alverio's sexual harassment claim because Alverio cannot prove that Sam's either knew or should have known about Lloyd's alleged harassment of Alverio and (2) Alverio's retaliation claim because Alverio cannot establish a causal link between her termination and her filing of the charge of discrimination. The court addresses each of Sam's arguments below.

## II. DISCUSSION

### A. Standard for deciding a motion for summary judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### B. Local General Rule 12

Before addressing the merits of Sam's motion for summary judgment, the court must address Alverio's failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN. R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file, among other items,

---

Montello and there is no affidavit in which Alverio states that she made no such statement to Montello.

4. Alverio denies that "Hixon spoke to her about the incident." (Pl.'s 12(N) Statement ¶ 40.) Alverio claims that when she attempted to explain what had happened, Hixon interrupted her and said that she did not want to hear it and she was letting Alverio go. Alverio cites to page 59 of her

deposition in support of this claim. However, that portion of her deposition was never submitted to the court and, thus, that fact is not before the court. Further, that fact, even taken at face value, does not show that Hixon did not speak to Alverio. Rather, it only shows that Alverio felt she did not get to say everything that she wanted to say.

a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

LOCAL GEN. R. 12(N)(3). Rule 12(N) further provides that "[a]ll material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.*, 122 F.3d 374, 382 (7th Cir. 1997).

■ In this case, Sam's filed a proper Rule 12(M) statement. In response, Alverio submitted a Rule 12(N) Statement in which Alverio either admitted or denied the facts contained therein. However, in ten of the paragraphs, Alverio admitted the facts contained therein and then proceeded to raise additional factual assertions. Such additional facts went beyond the "concise" response required by Rule 12(N)(3)(a). *Daulo v. Commonwealth Edison*, 938 F.Supp. 1388, 1395 (N.D.Ill.1996). The additional factual assertions should have been submitted in a separate statement of additional facts pursuant to Rule 12(N)(3)(b). *Id.* Sam's would then have been required to respond to those additional facts or have them deemed admitted. LOCAL GEN. R. 12(M).

■ The court could strike the additional factual assertions made in Alverio's Rule 12(N)(a)(3) response. *Id.* (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994)). However, in fairness to Alverio, the court will not do so. Instead, the court will determine if the additional facts listed in the 12(N)(3)(a) response are supported by the evidence and then go from there.

■ Alverio, however, did raise some additional facts properly in a separate statement of "additional relevant facts." (Pl.'s 12(N) Statement ¶¶ 41–43.) However, Sam's never responded to those facts as required by Rule 12(M). Thus, to the extent that those facts are supported by the record, they are deemed admitted as they are uncontested. *E.g., Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997); *Benion v. Bank One, Dayton*, 967 F.Supp. 1031, 1033 n. 1, (N.D.Ill. 1997).

■ Finally, in some instances Alverio denied the facts contained in Sam's 12(M) Statement, but she did not provide a cite to the record, (Pl.'s 12(M) Statement ¶¶ 36, 39); the cite did not support Alverio's denial, (*id.* ¶¶ 28, 31, 33); she cited to portions of depositions that were never submitted to the court, (*id.* ¶ 40); or she made arguments instead of stating facts, (*id.* ¶ 37). In those cases, to the extent that Sam's statement is supported by the record, Sam's statement is deemed admitted as it was not properly contested.

### C. *Alverio's sexual harassment claim*

Alverio's first claim against Sam's is a claim of sexual harassment. Alverio claims that Sam's is liable for the hostile work environment created by Lloyd's conduct. Sam's argues that it cannot be held liable for Lloyd's actions because Alverio has failed to show that Sam's knew or should have known about Lloyd's conduct. Sam's argues that an employer is not strictly liable for an employer's harassing behavior; rather, an employer is only liable if it was negligent in failing to discover the employee's harassing behavior.[5] Sam's relies on the case of *Jansen v. Packaging Corp. of America*, 123 F.3d 490 (7th Cir.1997), in support of its argument.

Insofar as *Jansen* stands for the proposition that an employer is only liable for a hostile work environment created by a supervisor if the employer knew or should have

---

5. Sam's does not argue that Lloyd's conduct did not constitute sexual harassment; therefore, the court assumes for the purpose of this motion that Lloyd's conduct did constitute sexual harassment and, thus, limits this opinion to the issue of whether Sam's can be held liable for Lloyd's conduct.

known of the supervisor's harassing conduct, *Jansen* is no longer good law. On June 26, 1998, the Supreme Court issued a pair of rulings that "substantially rewrote federal sexual harassment law." *More Harassment,* WASH. POST, June 28, 1998, at C06. In those two cases, the Supreme Court "set out a new rule that presumes companies are to blame when supervisors create a sexually hostile environment in the workplace." EDWARD FELSENTHAL, *High Court Finishes Term with Decisions Involving Workplace Environment,* WALL. ST. J., June 29, 1998, at A3.

In *Burlington Industries v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), and *Faragher v. Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (1998), the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth,* at 2270; *Faragher,* at 2292. In an attempt to keep this rule from being one of automatic liability, the Supreme Court further held:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... The defense comprises of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. ... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Ellerth,* at 2270; *Faragher,* at 2292.

■ Applying this rule to the case at bar, the court finds that Sam's motion for summary judgment should be denied as to Alverio's sexual harassment claim. It is clear that Lloyd was a supervisor at Sam's. Although Lloyd was not Alverio's immediate supervisor, it is a reasonable inference from the evidence that he had higher authority over Alverio. This inference can be drawn from the facts that (1) Lloyd had the authority to reprimand Alverio as is apparent from the incident where Lloyd called Alverio into the office to reprimand her about making personal calls on company time and (2) both Alverio and Zemaitis were afraid to report Lloyd's conduct for fear of being fired.

■ Based on the above, Sam's is subject to vicarious liability to Alverio for the actionable hostile environment created by Lloyd. However, because no tangible employment action was taken in this case, Sam's may raise an affirmative defense to either liability or damages. As explained above, two elements of this defense are (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) that Alverio unreasonably failed to take advantage of any preventive or corrective opportunities provided by Sam's or to avoid harm otherwise. However, the court cannot determine from the record whether Sam's is entitled to such an affirmative defense because there is no evidence as to whether Sam's took any steps to prevent sexually harassing behavior. Accordingly, Sam's is not entitled to summary judgment on Alverio's sexual harassment claim.

### D. *Alverio's retaliation claim*

Alverio's second claim against Sam's is a retaliation claim under 42 U.S.C. § 2000e–3(a). Alverio claims that she was fired from Sam's on September 25, 1996 for having filed a charge of discrimination with the EEOC on September 14, 1995. Sam's has moved for summary judgment on Alverio's retaliation claim, arguing that Alverio cannot establish a causal link between her having filed the charge with the EEOC and her having been fired.

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.A. § 2000e–3(a). To establish a *prima facie* case of retaliation under

§ 2000e–3(a), the plaintiff must show (1) that she engaged in a statutorily protected expression; (2) that she suffered an adverse employment action by her employer; and (3) that there is a causal link between the protected expression and the adverse action. *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir.1994) (citing *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989)). If the plaintiff makes that showing, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Pafford v. Herman,* 148 F.3d 658, 670 (7th Cir.1998). If the employer does so, the plaintiff then bears the burden of showing that the employer's proffered reasons are pretextual and that its actual reason was discriminatory. *Id.*

Sam's concedes that Alverio has shown that she engaged a statutorily protected expression and that she suffered an adverse employment action by her employer. Sam's, however, argues that Alverio has failed to show that there is a causal link between her filing of the charge of discrimination and her discharge.

In order to make out a Title VII retaliatory discharge claim, the plaintiff must show more than that she was fired. *See Hamann v. Gates Chevrolet, Inc.,* 910 F.2d 1417, 1420 (7th Cir.1990). She "must prove that her firing *was caused* by a prohibited retaliatory motive." *Id.* Generally, a plaintiff may show that there is a causal link between her participation in a statutorily protected expression and her discharge by showing "that the discharge took place on the heels of the protected activity." *Dey,* 28 F.3d at 1458.

In this case, Alverio has offered no evidence from which an inference reasonably could be drawn that Hixon fired Alverio because she filed a charge of discrimination with the EEOC. First, there is nothing about the timing which allows such an inference. In fact, the timing of the events cuts against Alverio. Alverio filed her charge of discrimination with the EEOC on September 14, 1995. It was well over a year later that Alverio was fired from Sam's for physically assaulting and verbally harassing a co-worker. Alverio has offered no reason why Hixon would wait over a year before firing Alverio in retaliation. *See Johnson v. Sullivan,* 945 F.2d 976, 982 (7th Cir.1991).

Second, the only reasonable inference from the evidence is that Hixon fired Alverio because she had concluded from her investigation that Alverio had physically abused and verbally harassed a Sam's employee. There is no dispute that the argument between DiVincenzo and Alverio took place at the store. Alverio admits that she (1) argued with DiVincenzo about whether she could purchase the merchandise; (2) made physical contact with DiVincenzo; and (3) was nervous and upset during the incident. Further, Hixon testified at her deposition that she had talked to all of the people involved in the incident. (Hixon Dep. at 68.) After that investigation, Hixon fired Alverio because Alverio "physically abused and harassed" one of Hixon's employees. (*Id.* at 72.) Hixon's finding that Alverio had done so was based on the fact that she "had witnesses to the fact that [Alverio] did what in fact was said she'd done, and she admitted it herself." (*Id.* at 78.) Two of those witnesses were DiVincenzo and Montello. DiVincenzo testified at his deposition that Alverio had yelled at him; that she called him an "asshole"; and that she hit his wrist with her closed fist. (DiVincenzo Dep. at 34–43.) Montello stated in an affidavit that Alverio was explaining her story "very loudly"; that she told him that DiVincenzo was "'nothing but a white boy punk'"; and that she had told him that she had struck DiVincenzo several times in an attempt to get him to remove his hands from her cart. (Montello Aff. ¶¶ 6–8.)

At this point, the court must emphasize that it is not making a determination as to what really occurred on September 25, 1996. Rather, all that the court is determining is whether the evidence before it permits the inference that Hixon fired Alverio on September 25, 1996 for filing a charge of discrimination with the EEOC on September 15, 1995. The court finds that the evidence before it does not permit such an inference. The only reasonable inference is that Hixon concluded from her investigation that Alverio had verbally harassed and physically assault-

ed DiVincenzo and that she should be fired for such behavior.

Alverio makes three arguments as to how the evidence shows that Hixon's reason for firing Alverio is pretextual. In making these arguments, Alverio is attempting to offer evidence which indirectly shows causation by showing that Sam's reason for the discharge was pretextual. It is true that a plaintiff may survive summary judgment if the defendant proffers a reason for firing the plaintiff that is patently inconsistent with the evidence before the court. *Hamann v. Gates Chevrolet, Inc.,* 910 F.2d 1417, 1421 (7th Cir.1990). However, none of the evidence to which Alverio points shows that Hixon's reason for discharge was patently inconsistent with the evidence before the court.

Alverio first argues that the reason for her discharge is "incredible and unreasonable on its face" because "[a]n argument with a co-worker when plaintiff was not even working which resulted in plaintiff tapping the back of the co-worker's hand is not a reasonable basis for her termination." (Pl.'s Resp. at 8.) The court disagrees. First, Sam's has a rule against fighting. (Hixon Dep. at 72.) Second, while Alverio tries to characterize the physical contact with DiVincenzo as "tapping," it is undisputed that she physically touched DiVincenzo several times in some way. Third, it makes no difference that Alverio was not working at the time; she was an employee and should have conducted herself accordingly while in the store. Finally, as explained above, Hixon concluded from her investigation that Alverio had physically assaulted and verbally harassed DiVincenzo. It was entirely reasonable for Hixon to fire Alverio for engaging in such conduct.

Alverio's second argument is that "[t]he disparate treatment between how Mr. Lloyd was treated when he was accused of assaulting Plaintiff and how Plaintiff was treated when she was accused of assaulting Mr. DiVincenzo is circumstantial evidence of retaliation." (Pl.'s Resp. at 9.) The court disagrees. The circumstances surrounding the two incidents were substantially different. With regard to the knife incident, the only two people present were Lloyd and Alverio, each of

whom has a very different account of the incident. Sam's suspended Lloyd and did not fire him because "it was an alleged assault" that "wasn't proven." (Hixon Dep. at 78.) In contrast, several people witnessed the fight between Alverio and DiVincenzo. After investigating the matter, Hixon concluded that Alverio should be fired because Hixon "had witnesses to the fact that [Alverio] did what in fact was said she'd done, and she admitted it herself." (*Id.*) The substantially different circumstances between the two incidents account for the disparate treatment of the two situations. Thus, the fact that Lloyd was suspended instead of fired and that Alverio was fired, without more, does not give rise to an inference that Alverio was fired for filing the charge of discrimination.

Alverio's final argument is that she has offered "direct evidence of the store manager's retaliatory motive and nature." (Pl.'s Resp. at 9.) This direct evidence consists of two incidents: (1) when "Hixon threatened Ms. Zemaitis with retaliation if she went and testified on Plaintiff's behalf" and (2) when Hixon had Alverio escorted out of the store after Alverio had been fired. The court, however, believes that neither of these incidents gives rise to an inference that Hixon fired Alverio because she filed a charge with the EEOC. *See Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 934 (7th Cir.1993) (explaining that an inference that the plaintiff's employer had "hatched an elaborate plot to get rid of him" a year and a half after he filed his worker's compensation claim is "too speculative" to justify a rational finder of fact in concluding that the plaintiff was fired because he filed the claim).

The evidence of the conversation between Hixon and Zemaitis does not support an inference that Hixon fired Alverio because she wanted to get back at Alverio for filing a charge with the EEOC. First, Alverio puts quite a spin on the evidence of the conversation between Hixon and Zemaitis. Zemaitis was not asked to testify at Lloyd's criminal trial. Zemaitis was contemplating going because Alverio had asked her to go to see if she could testify. Further, Hixon told Zemaitis that "things are going to be really

difficult for you here when you get back" and "I wouldn't suggest going." Hixon did not directly threaten Zemaitis; it was Zemaitis that took these statements as threats. In addition, one must look at where the conversation occurred in the entire sequence of events. This conversation occurred at least seven months before Alverio was fired. After Lloyd's trial was over, Hixon called Alverio into her office and apologized to her and told her that she was impressed that Alverio had continued to work at Sam's even though she had been treated poorly by Sam's employees. Finally, Hixon fired Alverio after she had conducted an investigation and concluded that Alverio had physically assaulted and verbally harassed a co-worker. Thus, a reasonable person would not look at this evidence as a whole and find that Hixon fired Alverio because she wanted to get back at Alverio for filing a charge of discrimination with the EEOC.

Similarly, the fact that Hixon had Alverio escorted out of the store on the day that Alverio was fired does not show that Hixon fired Alverio because she wanted to get back at Alverio for filing a charge with the EEOC. Hixon had fired Alverio that day for physically assaulting and verbally harassing a Sam's employee. Alverio had returned to the store later after being fired. It was at that point that Hixon had Alverio escorted out of the store. The fact that Hixon did not want Alverio in the store after having fired her does not mean that she fired her because she wanted to get back at her for filing a charge with the EEOC over a year earlier. It would not be reasonable to draw such an inference.

Finally, even if the court did find that Alverio had established her *prima facie* case, Sam's has offered a legitimate, nondiscriminatory reason for Alverio's discharge. Sam's contends that Hixon fired Alverio because she verbally harassed and physically abused a Sam's employee. Alverio has not shown that Sam's proffered reason for her dismissal was not the actual reason and that it was only a pretext for discrimination. For the reasons given above, none of Alverio's arguments or evidence shows that Sam's proffered reason for the dismissal was a lie. *See Crim v. Board of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir.1998).

In sum, Alverio has failed to establish that there was a causal link between her filing the EEOC charge and her discharge. The discharge occurred well over a year after Alverio filed her EEOC charge. Further, Hixon only fired Alverio after she had investigated the situation and concluded that Alverio had physically assaulted and verbally harassed a Sam's employee. Such a conclusion is supported by DiVincenzo's deposition, Montello's affidavit, and Alverio's own admissions. Thus, Hixon's reasons for firing Alverio is not patently inconsistent with the evidence. Because Alverio cannot establish the requisite causal link, she has failed to establish a *prima facie* case of retaliatory discharge. Moreover, even if Alverio had established a *prima facie* case, she has failed to show that Sam's proffered reason was a lie or pretextual. Accordingly, Sam's is entitled to judgment in its favor on Alverio's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part defendant's motion for summary judgment. The court grants summary judgment in favor of defendant Sam's Warehouse Club, Inc. and against plaintiff Carmen Alverio on plaintiff's Title VII retaliation claim. The court denies summary judgment as to plaintiff's Title VII sexual harassment claim.