# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 97-4245

Rita Phillips,

         Appellant,

v.

Taco Bell Corporation,
a California Corporation,

         Appellee.

         \* Appeal from the United
         \* States District Court for
         \* the Eastern District of Missouri

Submitted:  June 12, 1998
Filed:  October 1, 1998

Before WOLLMAN and MURPHY, Circuit Judges, and DOTY,[1] District Judge.

DOTY, District Judge.

Rita Phillips appeals the district court's order granting summary judgment in favor of Taco Bell on her Title VII hostile environment and constructive discharge

---

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

claims. Based on the Supreme Court's recent decisions in <u>Burlington Industries, Inc. v. Ellerth</u>, ___ U.S. ___, 118 S. Ct. 2257, 141 L. Ed.2d 633, 1998 WL 336326 (June 26, 1998) and <u>Faragher v. Boca Raton</u>, ___ U.S. ___, 118 S. Ct. 2275, 141 L. ED.2d 662, 1998 WL 336322 (June 26, 1998), we reverse in part, affirm in part, and remand this case to the district court for further proceedings.

## I.   BACKGROUND

The facts underlying this employment discrimination case are not in dispute. Appellant Rita Phillips was hired as a cashier by Appellee Taco Bell in March 1994. Beginning in March 1995, Duane Sonntag, a Taco Bell Store Manager and Phillips' immediate supervisor, began sexually harassing Phillips. Sonntag inappropriately touched Phillips or caused her to touch him on at least five occasions from March 1995 to June 18, 1995.

On June 20, 1995, Phillips left a voice mail message for Scott Williams, the local Taco Bell Market Manager, complaining about the unwanted sexual harassment by Sonntag. Williams returned Phillips' call the same day, and arranged a time for a meeting the next day to discuss Phillips' allegations. After Williams and Phillips met on June 21, Williams contacted Paul Ramsey, a Taco Bell Human Resources Manager in Chicago, to discuss Phillips' claims. On June 22, 1995, Williams informed Phillips that he would be out of town until July 5 and that he would conduct an investigation into her allegations against Sonntag upon his return. Williams told Phillips she could take a two-week paid vacation if she preferred not to work during the interim period; however, Phillips told Williams to commence his investigation upon his return and

chose to continue working during Williams' absence. Williams received a voice mail message from Phillips on June 29, 1995, in which Phillips complained that "Dwayne didn't get it," and upon returning Phillips' call later that day Williams learned from Phillips that another incident with Sonntag had occurred and that Phillips was no longer comfortable working at Taco Bell. Williams instructed Phillips to take a two-week, paid vacation.

Williams returned to St. Louis on July 5, 1995, but did not begin his investigation into Phillips' allegations until July 10 because Sonntag was on vacation. On July 10, Williams interviewed Sonntag, and thereafter suspended him pending the outcome of the investigation. Williams also took statements from other Taco Bell employees and, after contacting Human Resources, terminated Sonntag on July 14, 1995.

Phillips returned to the Taco Bell store to check her work schedule. After learning that she had been scheduled for some evening hours, she alleges that an Assistant Manager known only as "Jeff" spoke to her in a "nasty" tone of voice. Plaintiff admits that her conversation with Assistant Manager Jeff was void of sexual content. At that instant, Phillips decided to resign her employment with Taco Bell. She did so allegedly believing that she would be subjected to questioning and comments as to what had transpired between Sonntag and her and that she would be subjected to undesirable working conditions as a result of her complaining about Sonntag's sexual harassment.

After receiving a right to sue letter from the E.E.O.C., Phillips filed her complaint against Taco Bell in the United States District Court for the District of

Missouri on June 18, 1996,[2] claiming she was subjected to a hostile work environment and was constructively discharged in violation of Title VII of the Civil Rights Act of 1964.[3] The district court granted summary judgment in favor of Taco Bell, finding that Phillips' hostile environment sexual harassment claim failed because Taco Bell took prompt remedial action reasonably calculated to end the harassment. In addition, the district court concluded that Phillips' constructive discharge claim failed because Phillips did not show that a reasonable person would find her working conditions intolerable and that she failed to give Taco Bell a reasonable opportunity to remedy the problems she perceived.

## II.    DISCUSSION

Phillips contends that the district court erred in granting Taco Bell's motion for summary judgment. We review a district court's grant of summary judgment de novo, applying the same standard as the district court and affirming only when the evidence, viewed in the light most favorable to Phillips, reveals no genuine issue of material fact and that Taco Bell is entitled to judgment as a matter of law. Kinman v. Omaha Public

---

[2] Phillips conceded at the district court level that she did not have a right to sue letter from the Missouri Commission on Human Rights and the district court therefore determined that Taco Bell was entitled to summary judgment on all of Phillips' claims brought under that statute. Phillips does not challenge this determination on appeal.

[3] Phillips' complaint contains two counts, alleging both sexual discrimination (Count I) and sexual harassment (Count II). We agree with the district court that this case involves only a claim of sexual harassment, and will consider only those allegations.

<u>School Dist.</u>, 94 F.3d 463, 466 (8th Cir. 1996)**;** <u>Callanan v. Runyon</u>, 75 F.3d 1293, 1296 (8th Cir. 1996).

## A. Hostile Environment

Phillips argued in her written materials and at oral argument that the district court improperly granted Taco Bell's motion for summary judgment on her hostile environment claim because Taco Bell had not taken prompt remedial action upon learning of Sonntag's sexual harassment and that Taco Bell knew or should have known of Sonntag's sexual harassment because Sonntag, as store manager, was Phillips' direct supervisor.

In ruling on Taco Bell's motion for summary judgment, the district court applied circuit precedent. On June 26, 1998, however, the Supreme Court announced a new rule to be applied in federal sexual harassment cases. In <u>Burlington Industries, Inc. v. Ellerth</u>, ___ U.S. ___, 118 S. Ct. 2257, 141 L. ED.2d 633, 1998 WL 336326 (June 26, 1998) and <u>Faragher v. Boca Raton</u>, ___ U.S. ___, 118 S. Ct. 2275, 141 L. ED.2d 662, 1998 WL 336322 (June 26, 1998) the Court held that:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . . The defense comprises two necessary elements: (a) that the employer

exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Burlington Industries, 1998 WL 336326 at *15; Faragher, 1998 WL 336322 at *19.

In this case, there is no question that Sonntag was Phillips' supervisor at the time the alleged harassment occurred. Based on Sonntag's authority over Phillips, Taco Bell is now subject to vicarious liability to Phillips if Sonntag's actions created an actionable hostile working environment.[4] The district court's discussion of plaintiff's hostile environment claim was limited to its finding that Taco Bell, when it learned of Sonntag's conduct, took prompt remedial action reasonably calculated to end the harassment. No findings were made on whether Sonntag's actions were severe and

---

[4] To establish a sexually hostile work environment in violation of Title VII, a plaintiff has to establish that (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Todd v. Ortho Biotech, Inc., 138 F.3d 733, 736 (8th Cir. 1998); Davis v. City of Sioux City, 115 F.3d 1365, 1368 n.5 (8th Cir. 1997) (citing Hall v. Gus Const. Co. Inc., 842 F.2d 1010, 1013 (8th Cir. 1988)); Callanan, 75 F.3d at 1296 (quoting Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir. 1993)). Under this standard, the Eighth Circuit has found vicarious liability for an employer when the harasser was an owner, manager, or supervisor. See Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir. 1997); Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992).

pervasive enough to affect a term, condition, or privilege of Phillips' employment.[5] Harassment is actionable if it is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  The conduct in question "must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Howard v. Burns Bros., Inc., 149 F.3d 835, ___, 1998 WL 388673 at *4 (8th Cir. July 14, 1998) (citing Harris, 510 U.S. at 21-22).  Courts must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

The record here discloses that Sonntag inappropriately touched Phillips or caused her to touch him on at least five occasions from March 1995 to June 18, 1995. Phillips found these incidents humiliating and Sonntag's behavior made it difficult for Phillips to perform her job duties.  Since there is sufficient evidence of improper conduct and Phillips' subjective reaction, all that remains is the issue of whether Phillips has shown that the offending conduct created an objectively hostile environment.  Under the facts of this case, this is a question best left to the fact-finder. Howard, 1998 WL 388673 at *5; Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997)(discussing Justice Scalia's concurring opinion in Harris which notes that since

---

[5]  While the district court also did not discuss the requirements that Phillips belong to a protected group and be subject to unwelcome sexual harassment based on sex, it is evident that these elements have been satisfied.

Congress set no clear standard defining a hostile environment, it must be left to "virtually unguided juries" to decide whether particular conduct is "egregious enough" to merit an award of damages).

Assuming Phillips can show an actionable hostile environment claim, Taco Bell may raise an affirmative defense to either liability or damages.[6]  As just explained, the two elements of this defense are that (1) Taco Bell exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) Phillips unreasonably failed to take advantage of any preventive or corrective opportunities provided by Taco Bell or to avoid harm otherwise.  See Alverio v. Sam's Warehouse Club, ___ F. Supp.2d ___, 1998 WL 354383 (N.D. Ill. July 2, 1998) (applying the Supreme Court's new standard in a hostile environment sexual harassment case).

After examining the record, we conclude that this case must be remanded to the district court for further proceedings concerning the new affirmative defense.  With regard to whether Taco Bell exercised reasonable care to prevent any sexually harassing behavior, the Supreme Court noted that "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in

---

[6]  We note that no affirmative defense is available to an employer when a supervisor's harassment culminates in a tangible employment action such as discharge, demotion, or undesirable reassignment.  Burlington Industries, 1998 WL 336326 at *15; Faragher, 1998 WL 336322 at *19.  Phillips argues in connection with her constructive discharge claim that she quit her job as a result of Sonntag's harassment and her assignment to work some hours on a night shift.  As we explain, infra, Phillips was not constructively discharged, nor did she suffer any other tangible detrimental employment action.  The affirmative defense provided by Burlington Industries and Faragher is therefore available to Taco Bell.

-8-

every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." Burlington Industries, 1998 WL 336326 at *15; Faragher, 1998 WL 336322 at *19. During Phillips' employment, Taco Bell maintained a written sexual harassment policy, which was posted at all stores and which all employees, including Phillips, reviewed and signed, indicating an understanding of the policy's contents. Whether this is sufficient to satisfy this portion of the affirmative defense is best left to the finder of fact.

As for Taco Bell's response to Phillips' complaint, the facts are undisputed. Phillips informed Williams of Sonntag's harassment on June 20, 1995. Williams met with Phillips the next day, and on June 22, 1995, informed Phillips that she could take a two-week paid vacation pending Williams' investigation while he was out of town on other business. Given this vacation option, Phillips voluntarily chose to continue working. Upon learning from Phillips on June 29, 1995, that another incident had occurred, Williams instructed Phillips to take a two-week paid vacation. Williams interviewed Sonntag on July 10, 1995, after Sonntag returned from a vacation, suspended Sonntag at that time, and terminated Sonntag on July 14, 1995, after taking statements from other Taco Bell employees. We conclude that the district court is in the best position to analyze whether, upon learning of Sonntag's conduct, Taco Bell took prompt and appropriate remedial action reasonably calculated to end the harassment.

The second element of the affirmative defense concerns whether Phillips unreasonably failed to take advantage of any preventive or corrective opportunities

provided by Taco Bell or to otherwise avoid harm. Phillips alleges that Sonntag's harassment began in March 1995; however, Phillips did not complain to Taco Bell until June 20, 1995, at which time she left a voice mail message for Williams. Whether this delay in reporting Sonntag's conduct was reasonable, the effect this delay might have on Taco Bell's liability and any damages afforded Phillips is a question best left to the finder of fact. This case must therefore be remanded to the district court for further proceedings consistent with <u>Burlington Industries</u>, <u>Faragher</u>, and this opinion.

## B.   Constructive Discharge

To constitute constructive discharge, a plaintiff must show more than just a Title VII violation by her employer. <u>Coffman v. Tracker Marine, L.P.</u>, 141 F.3d 1241, 1247 (8th Cir. 1998). Constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." <u>Johnson v. Bunny Bread Co.</u>, 646 F.2d 1250, 1256 (8th Cir. 1981). <u>See also</u> <u>Bergstrom-Ek v. Best Oil Co.</u>, 1998 WL 462203 at *5 (8th Cir. Aug. 11, 1998). The employer's actions must have been intended to force the employee to quit, meaning the employee's resignation must be a reasonably foreseeable consequence of the employer's discriminatory actions. <u>Allen v. Bridegestone/Firestone, Inc.</u>, 81 F.3d 793, 796 (8th Cir. 1996) (citing <u>Hukkanen v. International Union of Operating Engineers</u>, 3 F.3d 281, 285 (8th Cir. 1993)). <u>See</u> <u>also</u> <u>Tidwell v. Meyer's Bakeries, Inc.</u>, 93 F.3d 490, 494 (8th Cir. 1996) ("To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit."). In addition, to prove that she was constructively discharged, a plaintiff must demonstrate that a reasonable person would

find the working conditions intolerable.  Allen, 81 F.3d at 796.  Such intolerability of working conditions is judged by an objective standard, not the plaintiff's subjective feelings.  Id.  Finally, to be reasonable "'an employee has an obligation not to assume the worst and not to jump to conclusions too quickly.  An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged.'" Summit v. S-B Power Tool, 121 F.3d 416, 421 (8th Cir. 1997) (quoting Tidwell, 93 F.3d at 494).  See also Coffman, 141 F.3d at 1247.

Phillips argues that the district court erred in granting summary judgment to Taco Bell on her constructive discharge claim because Sonntag's actions rendered her working conditions so difficult and intolerable that a reasonable person would have felt compelled to resign, and Phillips' resignation was a reasonably foreseeable consequence of Sonntag's conduct.  In addition, she contends that her resignation was justified because even after Sonntag's termination her working conditions remained hostile.

The evidence presented by Phillips does not support a finding of constructive discharge.  Phillips avers that upon her return to work after Sonntag's discharge Assistant Manager Jeff spoke to her in a "nasty" voice and scheduled her to work some evening hours.  This led to Phillips' subjective belief that upon her return to work her co-workers would badger her about her sexual harassment complaint.  However, during their brief conversation, Assistant Manager Jeff never said anything of a sexual nature, nor did he mention the investigation or Phillips' absence from work or any other objectionable topic.  Even if Assistant Manager Jeff did speak in a "nasty" voice, such a one time occurrence does not rise to the level of an objectively intolerable working

condition. In addition, being scheduled to work some evening hours is insufficient to establish constructive discharge. <u>See</u> <u>Summit</u>, 121 F.3d at 421 (transfer to another shift does not constitute constructive discharge); <u>Tidwell</u>, 93 F.3d at 496 ("Dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge."). Phillips has also not challenged the district court's finding that she did not give Taco Bell an opportunity to remedy any problems she perceived upon her return to work after the discharge of Sonntag.

Phillips repeatedly claimed during her deposition that she did not know when she returned to the Taco Bell store to check her work schedule that Sonntag had been fired on July 14, 1995. <u>See</u> Deposition of Rita Phillips at 16, 19, 20, 24, 73, 75, 77, 78, 112-13, 139. While Phillips may not have been aware of Taco Bell's action, she had an obligation not to assume the worst and jump to conclusions too quickly. <u>Summit</u>, 121 F.3d at 421. If Phillips had simply asked whether she would continue to have contact with Sonntag she would have learned of his termination. Instead, she simply quit without giving Taco Bell an opportunity to tell her of its response to her sexual harassment complaint. So also with respect to Assistant Manager Jeff's allegedly nasty tone of voice and Phillips' new work hours, Phillips' failure to give Taco Bell a fair opportunity to demonstrate that it had remedied the situation that had given rise to her complaints vitiated the continued validity of her claim. Accordingly, her constructive discharge claim fails as a matter of law.

III.    CONCLUSION

In light of recent Supreme Court jurisprudence, Phillips' hostile environment sexual harassment claim must be remanded to the district court for further proceedings consistent with <u>Burlington Industries</u> and <u>Faragher</u>.  Finding no error concerning Phillips' constructive discharge claim, however, we affirm as to that claim.

Affirmed in part, reversed in part, and remanded.

MURPHY, Circuit Judge, concurring in the result.

I agree with the result reached by the court, but not with the statements in footnote 4 which rely on prior circuit cases to set out the current governing standards for a sexual harassment case.  In <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. at 2283-2284, the Supreme Court discussed in considerable detail the standards to be used in determining whether a plaintiff has established an actionable hostile environment claim. <u>Faragher</u> and <u>Burlington Industries, Inc. v. Ellerth</u> are not just about vicarious liability and an employer's affirmative defense; they also speak to the other requirements for such a claim.  It is to these cases we must now look for guidance in considering a hostile environment case.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT