Wanda J. INGRAM, Plaintiff,

v.

Togo D. WEST, Jr., Acting Secretary
of the Department of Veteran
Affairs, Defendant.

No. 98–0751–CV–W–SOW.

United States District Court,
W.D. Missouri,
Western Division.

Oct. 7, 1999.

Wanda J. Ingram, Kansas City, KS, pro se.

Francis E. Reddis, U.S. Attorney's Office, Kansas City, MO, for defendant.

*Order*

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is defendant's Motion for Summary Judgment (Doc. # 22). For

the following reasons, defendant's motion is granted.

## I. Background

Pro se plaintiff Wanda J. Ingram ("Ingram") alleges she suffered discrimination due to a hostile work environment based upon her age, race, and sex which ultimately caused her constructive discharge. Plaintiff's claims are based upon Title VII of the Civil Rights Act of 1964. Ingram is an African–American woman, fifty-one years of age, who was employed by the Veteran's Administration Medical Center ("VA") in Kansas City, Missouri, from August 1991 to July 1996. During that period of employment, Ingram worked as a secretary in several different departments of the VA, including Human Resources Management Services, Equal Employment Opportunity Office, Prosthetics Services, Radiology Services, and Chaplain's Service. It was during Ingram's periods with the Chaplain's Service, and more specifically during her contact with Chaplain John Summers ("Summers"), that the alleged discrimination occurred.

The undisputed facts show that during the period of Ingram's detail with the Chaplain's Service, she was generally ridiculed for her work performance by Summers. Specifically, during a staff meeting Ingram provided a cup of water to the director of the VA Hospital. After the meeting Summers told her, "well, at least you can do something right." Ingram's typing ability was also criticized and Summers made it known that he wanted a different secretary.

In April of 1996, Ingram reported to work one morning to find the window near her desk open. Because of the chill temperature, she was forced to work in her overcoat. Summers stated to Ingram that the window was left open in order to teach her a lesson about not leaving windows unlocked overnight.

In May 1996, after an extended lunch due to long cafeteria lines, Ingram was called into Summers' office, whereupon he yelled at her about leaving the office unattended. Summers then ordered Ingram out of his office and slammed the door with such force that a picture fell from the wall. Ingram became distraught over this incident, consulted with VA Human Resources Management, and was told to go home for the rest of the day and that she would shortly be detailed out of Chaplain's Service.

Several days later, Ingram was temporarily transferred to Radiology Services, where she filed x-rays for the same salary and during the same hours as her secretarial job with Chaplain's Service. In early July 1996, Ingram resigned from the VA because of stress and illness relating to her work environment with Summers, claiming she was constructively discharged. During the month she spent in Radiology, however, Ingram had no contact with Summers, did not know whether she would be detailed back to Chaplain's Service, and had a good working environment with supervisors and co-workers.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of fact exists if a reasonable jury could not find for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. A plaintiff opposing a properly supported motion for summary judgment may not rest upon the allegations of his pleadings, "but must set forth specific facts showing there is a genuine

issue for trial." *Id.* at 256, 106 S.Ct. 2505 (citing Fed.R.Civ.P. 56(e)).

### III. Discussion

Plaintiff Ingram, acting for herself in a pro se capacity, alleges both a hostile work environment discrimination claim and also a claim for discriminatory constructive discharge. In its motion for summary judgment, defendant concludes that the facts of the case do not amount to a material issue which should be decided by a jury.

### A. Hostile Environment

To state a claim for hostile work environment harassment, Ingram must show: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Austin v. Minnesota Mining & Mfg. Co.,* 193 F.3d 992, 993 (8th Cir.1999); *Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir.1999) (citing *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1377 (8th Cir.1996); *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)). There is no real dispute concerning whether Ingram was a member of a protected group or whether she experienced harassment that was unwelcome to her. There is room for argument, however, concerning the next three factors.

■ To prevail on her hostile environment claim, Ingram must show a causal nexus between the harassment and her membership in the protected groups. While "gender-based insults" and "racial epithets" may give rise to an inference of discrimination based upon membership in the particular protected class, *see Carter,* 173 F.3d at 700–01, "[a]ll instances of harassment need not be stamped with signs of overt discrimination to be relevant

under Title VII...." *Id.* at 701 (citing *Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010, 1014 (8th Cir.1988)). What is necessary to show harassment motivated by membership in a protected class is a "course of conduct which is tied to evidence of discriminatory animus." *Id.*

■ Although Ingram did not produce a great deal of evidence that the particular instances of harassment alleged in her complaint were motivated by discriminatory animus, she was subject to ridicule about her job performance and on certain instances was the target of intimidation by Chaplain Summers. While none of this behavior explicitly indicated a gender, racial, or age bias against Ingram, she was a member of all three protected classes and the record shows that she was the only individual to be subject to this harassment. When a pattern of conduct is arguably informed by discriminatory animus, the question is best left for the finder of fact.

■ To succeed on her hostile environment claim, Ingram must further show the harassment was so severe as to alter the conditions of her employment. This requirement has both objective and subjective prongs, and the offensive situation must offend a reasonable person as well as the plaintiff herself. *Carter,* 173 F.3d at 701. When the employment environment is objectively offensive, tangible injury on the part of plaintiff is certainly enough to show an alteration in the conditions of employment, but "even conduct that 'does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing their careers.'" *Smith v. St. Louis University,* 109 F.3d 1261, 1265 (8th Cir.1997) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In order to determine the severity of the harassment, several factors are useful. "[T]he frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating or only an

offensive utterance, whether it unreasonably interferes with the employee's work performance, physical proximity to the harasser, and the presence or absence of other people" all shed light on the issue of alteration in employment conditions. *Carter*, 173 F.3d at 702.

Plaintiff Ingram alleges several physical manifestations of her harassment by Summers, including high blood pressure and an inability to sleep. These physical symptoms, coupled with her heightened levels of nervousness and stress surrounding her day-to-day working conditions, show conclusively that the environment engendered by Summers' behavior was subjectively offensive to Ingram. Whether the work environment was objectively offensive is a closer question. During the period of time Ingram worked under Chaplain Summers, her ability as an employee was routinely ridiculed, both in private and in one instance in front of other VA Hospital staff, a door was slammed in her proximity so hard a picture fell off the wall, and a window was left open overnight on purpose resulting in an unnaturally cold work space. This pattern of hostility certainly is not overly egregious in its severity, but it is susceptible of interpretation as humiliating and possibly even physically threatening in some instances. Here, as above, a close factual case should be left to the trier of fact.

Finally, for Ingram to prevail, she must show her employer knew or should have known of the harassment and failed to promptly and effectively remedy the situation. Once again, a series of factors sheds light on this question, specifically "the amount of time that elapsed between the notice and remedial action, ... the options available to the employer, ... and whether or not the measures ended the harassment...." *Carter*, 173 F.3d at 702.

In *Carter*, company officials met with and warned the harasser immediately after the first complaint of harassment, but this warning was inadequate, especially since the harasser was undeterred in his activities. *Id.* at 703. Similarly, in *Smith*, the court found a material issue of fact existed where four months elapsed between the first report of harassment and the meeting between the harasser and the dean of the medical school. *Smith*, 109 F.3d at 1265. In the present case, the facts show that Ingram brought the harassing behavior to the attention of the hospital's Human Resources Department around noon on May 22, 1996. The personnel specialist in that office told Ingram to go home for the rest of the day and that she would be immediately detailed out of the service of Chaplain Summers. Six days later, without any interim contact with Summers, Ingram was detailed to Radiology Services at the same pay scale and with the same hourly work schedule. At no time after the May 22 report did Ingram have any contact with Chaplain Summers, and no further incidents of harassment or discrimination occurred.

Because the VA Hospital took immediate action on Ingram's report of discrimination, and because the immediate action stopped all harassing activities, there is no material issue of fact with respect to the promptness or reasonableness of VA's response. Because Ingram is not able to show sufficient facts to prove all five elements of a hostile work environment claim as set forth in *Carter*, defendant is entitled to summary judgment on plaintiff's claim of hostile work environment.

**B. Constructive Discharge**

"To constitute constructive discharge, a plaintiff must show more than just a Title VII violation by her employer." *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998). Constructive discharge arises when "the employer ... deliberately create[s] intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996) (citing *Johnson v. Bun-*

*ny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)); *see also Phillips,* 156 F.3d at 890. "The employer's actions must have been intended to force the employee to quit, meaning the employee's resignation must be a reasonably foreseeable consequence of the employer's discriminatory actions." *Phillips,* 156 F.3d at 890 (citing *Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 796 (8th Cir.1996)). The employee must also be reasonable in finding the working conditions intolerable. *See id.* In order to act in a reasonable manner, the employee must not assume the worst and must give the employer a reasonable chance to resolve the problem. *See Phillips,* 156 F.3d at 890 (quoting *Summit v. S–B Power Tool,* 121 F.3d 416, 421 (8th Cir.1997)); *Tidwell,* 93 F.3d at 494 (citing *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995)).

It is undisputed by the parties that Chaplain Summers created what Ingram felt to be intolerable working conditions at the VA Hospital. The parties also do not dispute that Ingram subsequently did resign from her job voluntarily in July 1996. What is in dispute is whether Ingram's resignation was reasonable given the severity of the harassment by Summers and the response by the VA's Human Resources Management. This Court's answer is that it was not.

Ingram worked for Chaplain Summers from September 1995 through May 1996. On May 22, she first complained of the intolerable working conditions in the service of the Chaplain. The response she received was immediate and effective: transfer to another department and no further contact with Chaplain Summers. Approximately one month after her transfer away from Summers, Ingram resigned citing residual stress and health problems she attributed to constant uneasiness about her experience with Summers. However, during that period of time Ingram did not have any contact with Summers, she received the same pay and worked the same hours as before, and her

working relationship with her new supervisor and co-workers was at a minimum satisfactory. In the opinion of this Court, the VA Hospital adequately responded to and remedied the problem. Therefore, plaintiff Ingram was not constructively discharged.

### IV. Conclusion

For the above reasons, it is hereby

ORDERED that defendant's Motion for Summary Judgment (Doc. # 22) is granted.