# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1789

_____

Ola Jackson,                                    *
                                                *
            Appellant,                          *
                                                *
      v.                                        *
                                                *
Arkansas Department of Education,               *
Vocational and Technical Education              *    Appeal from the United States
Division; Lonnie McNatt, Director,              *    District Court for the
Individually and in his official                *    Eastern District of Arkansas
capacity; Roy Wood, Dr., Associate              *
Director, Individually and in his               *
official capacity,                              *
                                                *
            Appellees.                          *

_____

Submitted:  June 11, 2001

Filed:  December 4, 2001

_____

Before McMILLIAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____


McMILLIAN, Circuit Judge.

Ola Jackson appeals from a final order entered in the District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of her former employer, the Arkansas Department of Education, Vocational and Technical Education Division ("the Department") and her supervisors in their official and individual capacities. The district court dismissed Jackson's claims of sexual harassment, race discrimination and constructive discharge brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Jackson v. Arkansas Department of Education, No. LR-C-97-422 (E.D. Ark. Mar. 6, 2000) (memorandum and order). For reversal, Jackson argues that the district court erred in granting summary judgment because there were outstanding issues of material fact regarding: (1) whether the Department was entitled to the affirmative defense against vicarious employer liability for sexual harassment claims and (2) whether Jackson was constructively discharged. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331 and 1343. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

## Background

The following facts are based upon the district court order.[2] Jackson was employed by the Department as a Secretary II from November 23, 1993 until September 12, 1995. From the first day of her employment, Jackson's supervisor, Robert Gwatney, made unwelcome and unsolicited remarks to her about sexual favors and hugged and touched her inappropriately. On August 31, 1994, Jackson's fiancé phoned one of Jackson's supervisors, Ruth Deaton, to inform her of the sexual harassment. Deaton immediately informed her supervisor, Roy Wood, who began an investigation of the allegations.

During the investigation, Wood and the personnel director, Dianne Farquhar, met with Jackson to hear her complaints. Wood and Farquhar agreed to change Jackson's working hours so that she would not be alone in the office with Gwatney. They also assured Jackson that Gwatney's offensive behavior would stop immediately and asked her to inform them if it continued. Wood and Farquhar then met with Gwatney, who admitted hugging Jackson but denied the rest of the allegations. Gwatney agreed to avoid any further contact with Jackson that might be interpreted as improper. Although the investigation was considered inconclusive, Wood and Farquhar assured Jackson that Gwatney would not hug or touch her in any manner, nor would he discuss sexual matters with her again.

Pursuant to the Department's formal anti-harassment grievance process, Wood and Farquhar attempted to schedule a meeting with both Jackson and Gwatney. Jackson declined the Department's offer and instead stated her intent to file a

---

[2]Because Jackson did not respond to the original motion for summary judgment filed by the Department, the district court adopted the Defendants' Statement of Undisputed Facts Admitted by the Plaintiff per Local Rule 56.1(c). Jackson does not dispute any of these facts on appeal.

grievance with the EEOC. Jackson informed Wood and Farquhar that her new working hours conflicted with her child care arrangement, so they arranged for Gwatney to leave the office at 4:30 p.m. every day, to avoid the possibility of being alone with Jackson during the time in which the harassment had occurred. For two weeks afterwards, Wood stopped by Jackson's office daily to ask how she was doing and to ensure that Gwatney had left the office by 4:30. Jackson did not complain again about Gwatney's conduct.

On June 23, 1995, the Department learned that Gwatney had lied during the investigation about his conduct toward Jackson. Gwatney was immediately terminated.

On June 27, 1995, Jackson complained to Wood that she had been asked to perform data entry, which she claimed was not included in her job responsibilities. Wood arranged for Jackson to meet with Farquhar on June 29, 1995, to discuss her job duties. However, Jackson left work on June 27 for a doctor's appointment and remained on leave for "job-related stress" until July 26, 1995.

On July 5, 1995, Lonnie McNatt, a Department director, sent Jackson a letter reinstating all of the sick leave time she had used during the period of time following her complaints of Gwatney's harassment until his termination. The letter also invited her to submit for payment any medical bills that she believed had resulted from the harassment.

Jackson returned to work on July 26, 1995. Wood temporarily reassigned her data entry duties to other employees. Three days later, Jackson took another extended leave. On August 24, 1995, Jackson was notified that she had exhausted all of her paid leave time on August 7, 1995, but that she was entitled to 196 hours of unpaid leave under the Family Medical Leave Act. On August 29, 1995, Jackson received a summary of her remaining leave time. On September 12, 1995, Jackson was

terminated because she had exhausted all of her leave time and had failed to return to work.

On May 22, 1997, Jackson sued the Department and her supervisors in their individual and official capacities for sexual discrimination and constructive discharge in violation of her rights under Title VII and 42 U.S.C. § 1981, alleging that the Department (1) was vicariously liable for Gwatney's sexual harassment of her and (2) had constructively discharged her by firing her after Gwatney's hostile work environment sexual harassment prevented her from returning to work. On May 13, 1998, the district court granted summary judgment in favor of Gwatney and dismissed him in his individual capacity from the lawsuit. On May 27, 1998, the district court granted summary judgment in favor of the remaining defendants, including Gwatney in his official capacity, and dismissed them in their official and individual capacities from the lawsuit, thus terminating the action.

Jackson timely appealed the district court's order and judgment *pro se*. On December 11, 1998, this court reversed the district court's order and remanded the case for further consideration in light of <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998) (<u>Ellerth</u>), and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) (<u>Faragher</u>). On March 6, 2000, after re-briefing by the parties, the district court again granted summary judgment in favor of the defendants. The district court assumed for purposes of analysis that Gwatney's conduct was severe or pervasive enough to alter Jackson's working conditions and thus created a hostile work environment. Nonetheless, the district court found that, in the absence of a tangible employment action, the Department was entitled to the affirmative defense provided by <u>Faragher</u> and <u>Ellerth</u> because the Department had demonstrated effectively that: (1) it had exercised reasonable care to prevent and promptly correct any sexually harassing behavior and (2) Jackson had unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Department or to otherwise avoid harm.

Jackson timely appealed, and this court appointed counsel to represent her on appeal.

Jackson's new counsel unsuccessfully attempted to obtain a copy of Jackson's original deposition in this case from opposing counsel, the district court, and this court. On June 5, 2001, Jackson moved to strike from the record on appeal excerpts of her deposition included in the Department's appendix on the grounds that the complete deposition was unavailable. On June 12, 2001, the Department opposed the motion to strike. On June 8, 2001, this court entered an order taking the motion with the case, which was argued and submitted on June 11, 2001.

## Discussion

Standard of Review

We review the district court's grant of summary judgment *de novo* to determine whether "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Randolph v. Rogers, 170 F.3d 850, 856 (8th Cir. 1999). As the nonmoving party, Jackson bears the burden "of presenting evidence sufficiently supporting disputed material facts that a reasonable jury could return a verdict in [her] favor." Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992). However, summary judgment will be improper only if the factual dispute in question affects the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Availability of Affirmative Defense

Faragher and Ellerth provide an affirmative defense to an employer's vicarious liability under Title VII for an employee's hostile work environment claim based on a supervisor's harassment:

> When no tangible employment action is taken, a defending employer
> may raise an affirmative defense to liability or damages . . . [which]

-6-

comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher, 524 U.S. at 807; see also Todd v. Ortho Biotech, Inc., 175 F.3d 595, 597 (8th Cir. 1999) (Todd).

Jackson contends that the district court erred in granting summary judgment because there are genuine issues of material fact regarding whether the Department was entitled to the affirmative defense articulated in Faragher. Specifically, Jackson claims that (1) the Department's anti-harassment prevention policy was ineffective, as evidenced by the eight months it took to expose Gwatney's lies about the sexual misconduct, and (2) as a result of the policy's ineffectiveness, it was not unreasonable for her to disregard it. Jackson further asserts that a jury is best qualified to resolve the issue. The Department responds, based on the undisputed facts, that (1) its harassment prevention policy was effective, because it immediately acted upon Jackson's complaint by rescheduling Gwatney's work hours, conducting an investigation, encouraging Jackson to inform her supervisors of further harassment, and regularly checking with Jackson to ensure that no continued harassment had occurred; and (2) Jackson unreasonably failed to take advantage of the preventive and corrective opportunities the Department provided by failing to report the harassment until August 31, 1994, and by electing to file a grievance with the EEOC rather than comply with the Department's formal anti-harassment procedures. We agree with the Department.

In the present case, the Department fulfilled the "primary objective" of Title VII, which is "not to provide redress but to avoid harm." Faragher, 524 U.S. at 806 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)); see also Ellerth, 524 U.S. at 764 ("Title VII is designed to encourage the creation of antiharassment policies and effective grievance mechanisms."); Todd, 175 F.3d at 598 ("The

Supreme Court's new affirmative defense was adopted to avoid 'automatic' employer liability and to give credit to employers who make reasonable efforts to prevent and remedy sexual harassment."). Upon notification of Gwatney's improper behavior, the Department immediately activated its anti-harassment prevention policy to investigate Jackson's complaint and to avoid any situation in which Gwatney might repeat the behavior. The Department conscientiously solicited Jackson to ensure that the harassment had ended and encouraged her to inform her supervisors if the harassment continued. As a result, we agree with the district court that the undisputed facts show that the Department acted promptly and effectively to remedy the past sexual harassment and to avoid any future incidents, thus satisfying the first prong of the affirmative defense articulated in Faragher.

In addition, the Department fulfilled the second prong of the affirmative defense by showing beyond genuine dispute that Jackson unreasonably failed to take advantage of the Department's preventive or corrective opportunities through her failure to report the harassment for more than nine months after it began and her refusal to participate in the proposed meeting with the Department and Gwatney. See Faragher, 524 U.S. at 807-08 (recognizing that an employee's failure to use the employer's complaint procedure will normally satisfy the employer's burden regarding the second element of the affirmative defense).

For these reasons, we hold that the district court did not err in concluding that there were no genuine issues of material fact regarding whether the Department was entitled to the Faragher affirmative defense against vicarious liability for supervisor sexual harassment.

Constructive Discharge

The Department would not be entitled to the affirmative defense against vicarious employer liability for sexual harassment if a tangible employment action

was taken as a result of the harassment. See Faragher, 524 U.S. at 807 (only "when no tangible employment action is taken [may] a defending employer . . . raise an affirmative defense"). Jackson argues that the district court erred in granting summary judgment because an outstanding issue of material fact exists regarding whether she was constructively discharged. If Jackson was in fact constructively discharged, then the constructive discharge would constitute a tangible employment action and prevent the Department from utilizing the affirmative defense. See Ellerth, 524 U.S. at 765 ("No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."); see also Phillips v. Taco Bell Corp., 156 F.3d 884, 889 n.6 (8th Cir. 1998) (Phillips) (noting that "no affirmative defense is available to an employer when a supervisor's harassment culminates in a tangible employment action").

"Constructive discharge occurs 'when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job.'" Phillips, 156 F.3d at 890 (quoting Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981)). To be liable, the employer must have intended to force the employee to quit, or at least have reasonably foreseen the employee's resignation as a consequence of the unlawful working conditions it created. See id.; see also Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996) ("To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit."). Furthermore, the employee must also show that a reasonable person, from an objective viewpoint, would find the working conditions intolerable. See Phillips, 156 F.3d at 890; Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 796 (8th Cir. 1996). To be reasonable, an employee must give her employer a reasonable opportunity to correct the problem. See Phillips, 156 F.3d at 890.

Jackson alleges that the Department constructively discharged her because she was exposed to hostile work environment sexual harassment for the eight months it took the Department to discover that Gwatney had lied during the investigation. During those eight months she allegedly experienced emotional distress that prevented her from returning to work. The Department counters that, because Jackson's medical leave began after Gwatney was terminated, Jackson's reason for leaving the workplace could not be attributed to Gwatney's harassment. As a result, the Department argues, Jackson was not constructively discharged and there was no tangible employment action to negate the affirmative defense.

We agree with the district court that the Department's expectation that Jackson would return to work, especially after Gwatney had been terminated, does not rise to the level of an objectively intolerable working condition. Moreover, Jackson did not provide the Department with a reasonable opportunity to correct the alleged problem because she did not notify it until nine months after the harassment started and because she refused to participate in the Department's formal sexual harassment correction procedure. Furthermore, the Department did reasonably correct the problem of Jackson's harassment, by changing Gwatney's schedule, reimbursing her sick leave time, checking on her continued state of mind, and ultimately firing Gwatney.

As a result, we hold that the district court did not err in concluding that there were no genuine issues of material fact concerning the reasonableness of the working conditions created by the Department. Therefore, we further hold that the district court was correct in dismissing Jackson's constructive discharge claim because her working conditions were not so intolerable that she was forced to resign. Our holding thus necessitates the conclusion that the district court properly determined that, due to the absence of the Department's tangible employment action, the Department was entitled to the affirmative defense articulated in Faragher.

-10-

Motion To Strike Jackson's Deposition

Jackson argues that, pursuant to Fed. R. Civ. P. 32(a)(4) and Fed. R. Evid. 106, when part of a deposition is offered, the adverse party must be able to access any other part of the deposition in order to place the excerpt in an accurate context. The Department responds that, because the deposition was properly filed with the district court in support of its original motion for summary judgment, it was properly part of the record on appeal according to Fed. R. App. P. 10(a).

After carefully reviewing the record, we find that the excerpted portions of Jackson's deposition are not relevant to the arguments asserted in this appeal. Furthermore, the district court did not rely upon Jackson's deposition in compiling its findings of fact.[3] In any event, pursuant to Local Rule 56.1(c), Jackson forfeited her ability to contest the facts presented in the Department's original summary judgment motion by her failure to respond to the Department's motion. As a result, we deny Jackson's motion to strike her deposition from the record.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The only potential conflict between the district court's undisputed statement of facts and Jackson's own responses to the Department's interrogatories is substantiated by affidavits from the Department's employees and not Jackson's deposition.