# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2814

_____

Cheryl G. Campos,

             Appellee,

v.

City of Blue Springs, Missouri,

             Appellant.

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: January 17, 2002

Filed: May 15, 2002

_____

Before LOKEN, HEANEY and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Cheryl Campos filed suit under 42 U.S.C. § 2000e, *et seq.*, alleging that she was constructively discharged by the City of Blue Springs, Missouri ("the City") because of her religion, race, and national origin. Following a trial, a jury found in favor of Campos on her claim of religious discrimination. The City appeals that decision. We affirm.

I.    BACKGROUND

In April 1996, Campos was hired as a crisis counselor for the Blue Springs Police Department's Youth Outreach Unit (YOU).[1]  At that time, Campos did not have the advanced psychology or social work degree and Missouri licensure required by the written job description for the position.

Campos's immediate supervisor at YOU was Pamela Petrillo.[2]  When Campos was hired, Petrillo indicated that Campos needed to complete her Ph.D. dissertation and obtain a Missouri counseling license by February of 1997 to guarantee her continued employment.  Petrillo also informed Campos that she would be paid an extra $10,000 per year for support group work, she would be a team leader within three months, and she would be an assistant director within six months of starting her full-time employment.

On October 21, 1996, Campos began working full-time.  Initially she enjoyed her work and got along well with co-workers.  This apparently changed on October 31, 2001 after she disclosed to Petrillo that she observed tenets of Native American spirituality rather than Christianity.  Campos contends that Petrillo treated her differently after this disclosure.  For example, Campos alleges that Petrillo's behavior towards her became unfriendly and critical, and that she began to imply that Campos may not have been a good fit for the job.  Petrillo also began to exclude Campos from employee meetings, including those during which employees discussed whether YOU should be transformed into a Christian counseling unit.

_____

[1]As a crisis counselor, Campos worked with at-risk youth.

[2]While Petrillo was not a paid employee of the City, she supervised City employees with the City's approval and had the rank of City Director, which gave her the power to hire and fire City employees.

On November 23, 1996, Campos was injured in a car accident. Because these injuries prevented her from spending time outside of work to complete her Ph.D. dissertation, she was granted an extension of the February deadline. Petrillo testified that she set a June 1, 1997 deadline for Campos to complete her dissertation. Campos denied that a new deadline was established.

On January 6, 1997, Petrillo completed Campos's three-month evaluation. The evaluation was largely complimentary. Nevertheless, Campos contends that Petrillo continued to treat her poorly. Campos testified that she was passed over for the team leader position she was promised when she was hired. She also testified that Petrillo told her she was not a good role model and that she needed to find a good Christian boyfriend to teach her to be submissive. Finally, Campos testified that Petrillo unfairly criticized her for missing deadlines and began to falsely accuse her of making mistakes.

In March 1997, Campos did not receive the $10,000 in extra compensation that Petrillo promised she would earn for conducting support groups. When Campos complained, Petrillo responded that people "sometimes [have] to give up the things they need most in order to be a good Christian." Transcript, Vol. I, p. 85. Campos also testified that she was taken off of counseling assignments because of her refusal to use the scripture, and that she was verbally abused by co-workers at the direction of Petrillo. In May of 1997, Campos was given a favorable six-month evaluation.

By September of 1997, Campos still had not completed her dissertation, so she arranged to meet with her dissertation professor every Monday afternoon during the fall. In order to take time off from work, Campos submitted written requests in advance of her absences. Petrillo did not respond to these requests, nor did she make herself available to meet with Campos to discuss the absences. After repeated attempts, Campos remained unable to obtain explicit permission from Petrillo to attend her dissertation meetings. Unable to reach Petrillo, Campos went to a meeting

without permission. Petrillo responded by accusing Campos of misconduct and informing Campos that she could not grant her permission to attend the meetings without a letter from the university explaining why the meetings were necessary. Although Campos admitted that obtaining such a letter would not have been a problem, she chose to resign. Campos initially cited Petrillo's abusive behavior and intolerable workings conditions as the reasons for her resignation.[3] It was not until Campos's last day of work that she alleged she had been discriminated against because of her religion.[4]

After her resignation, Campos filed suit against the City, alleging that she suffered from employment discrimination based upon her religion, sex, and national origin. The charges of sex and national origin discrimination were eliminated, and the case was submitted to the jury on the theory that Campos was constructively discharged because of her religion. On April 13, 2001, the jury awarded Campos $79,200 for back pay and compensatory damages. The district court[5] denied the City's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial, and awarded Campos's attorneys $90,556.20 in fees and $11,825.41 in expenses.

---

[3]Campos's brief contains a litany of additional specific allegations of discriminatory behavior on the part of Petrillo. We see no need to recite those specific allegations here.

[4]Campos testified that she learned from co-workers that religious differences were the source of Petrillo's disdain for her at the time of her resignation.

[5]The Honorable Scott O. Wright, Senior United States District Judge.

-4-

## II.    DISCUSSION

### A.

On appeal, the City first alleges that there was insufficient evidence to support the jury's determination that Campos was discriminated against and constructively discharged due to her religion, and therefore the trial court erred by denying the City's Motion for Judgment as a Matter of Law.  We review de novo the district court's denial of a motion for judgment as a matter of law.  Riley v. Olk-Long, 282 F.3d 592, 595 (8th Cir. 2002) (citation omitted).  We apply the same standard as the district court, viewing all the facts in Campos's favor and granting her all reasonable inferences.  Id. at 595 (citation omitted).  "Judgment as a matter of law is appropriate only when all of the evidence points one way, and is susceptible of no reasonable inference sustaining the jury's verdict."  Kipp v. Missouri Highway and Transp. Comm'n., 280 F.3d 893, 896 (8th Cir. 2002) (citation omitted).

The City contends that Campos failed to present sufficient evidence to establish its liability for religious discrimination by constructive discharge because she failed to prove that it deliberately created intolerable working conditions with the intention of forcing her to quit.  To prove constructive discharge, Campos was required to establish that the City, and Petrillo in particular, deliberately made or allowed her working conditions to become so intolerable that she had no other choice but to resign, Jones v. Fitzgerald, 285 F.3d 705, 715-16 (8th Cir. 2002) (citations omitted), or "at least [should] have reasonably foreseen [Campos'] resignation as a consequence of the unlawful working conditions [that were] created."  Jackson v. Arkansas Dept. of Educ., Vocational and Technical Educ. Div., 272 F.3d 1020, 1026 (8th Cir. 2001).  Furthermore, Campos was required to show that a "reasonable person, from an objective viewpoint, would find the working conditions intolerable."  Id.  "To be reasonable, an employee must give her employer a reasonable opportunity to correct the problem."  Id.  In other words, "[a] plaintiff must take affirmative steps

short of resigning that a reasonable employee would take to make her conditions of employment more tolerable." Jones, 285 F.3d at 716 (citation omitted).

We agree with the district court that Campos presented sufficient evidence to allow the jury to find that she was forced to quit because she was not a Christian. Campos presented evidence that she was subjected to months of harassment and criticism by Petrillo because Petrillo wanted a Christian in Campos's position. Campos also demonstrated that immediately before her resignation Petrillo refused to respond to her request to attend dissertation meetings, which were a prerequisite to her continued employment. Petrillo then accused Campos of insubordination for failing to get permission. The jury had sufficient evidence to find that Petrillo made it nearly impossible for Campos to attend the dissertation meetings because she wanted to replace Campos with a Christian employee. The jury also had sufficient evidence to determine that Campos's resignation was a foreseeable consequence of Petrillo's actions. See Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000).[6]

---

[6]The City also argues that Campos failed to prove that she was treated less favorably than similarly-situated employees because of her religious beliefs and that she failed to give the City an opportunity to resolve her complaint. See Ogden v. Wax Works, Inc., 214 F.3d 999, 1006-07 (8th Cir. 2000) (noting that defense is sometimes available in supervisor harassment cases where the plaintiff suffers no tangible employment action, when the employer establishes by a preponderance of the evidence that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm). The City's first contention is without merit, as the "similarly situated" analysis does not apply in the present case because there was no evidence that other employees were similarly situated to Campos. Further, we agree with the district court's conclusion that the City was given a reasonable chance to resolve the purported discrimination against Campos. At trial Campos presented evidence that her fellow employees reported Petrillo's mistreatment as early as August of 1997. The evidence also revealed that Campos

B.

We next address the City's contention that the district court erred when it denied the City's proposed jury instructions. We review the jury instructions given by a district court for an abuse of discretion. See e.g. Brown v. Sandals Resorts Int'l., 284 F.3d 949, 953 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, 'fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Id. (quoting Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir.2001)). We will not reverse "unless we find that the error affected the substantial rights of the parties." Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 699 (8th Cir. 2001).

Two proposed jury instructions are at issue here. The first -- Proposed Jury Instruction No. 8 -- reads as follows:

> Plaintiff cannot rely on mere speculation to prove her claim of discrimination. Plaintiff's own perception of the adequacy of her own performance is irrelevant because it does not shed any light on whether defendant based its actions on performance related considerations.

The City argues that the district court should have accepted this instruction because Campos testified about her own perception of her job performance and her right to be promoted as contributing to her intolerable working conditions. However, at trial Campos's job performance was never an issue. The City never argued that Campos's poor job performance caused Petrillo's abusive behavior, and it was generally undisputed that the Campos was performing satisfactorily. Hence, this instruction was unnecessary.

complained about Petrillo's behavior to both Dee Jones, the personnel director, and to Chief Brown, the head of the department, before her resignation. No action was taken by either of these individuals.

The second proposed jury instruction that was rejected -- No. 9 -- reads as follows:

> Stray remarks or statements of personal opinion in the workplace do not constitute direct evidence of discrimination. Statements made by persons not involved in the defendant's actions or statements by decision-makers that are unrelated to the defendant's actions do not constitute direct evidence that plaintiff's religion was a factor in the employer's action.

The City contends that it was error to refuse this instruction because Campos introduced evidence of statements made by Petrillo that were nothing more than stray remarks about religion. See Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (noting that stray remarks are not direct evidence sufficient to invoke Price Waterhouse formula). We disagree. Because this instruction inaccurately states the law, it was properly refused by the district court. Direct evidence of discrimination may include evidence of remarks or comments which indicate discriminatory animus on the part of those with decision making authority. See id. ("actions or remarks . . . uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of Price Waterhouse") (citing Burns v. Gadsden State Cmty. Coll., 908 F.2d 1512, 1517-19 (11th Cir.1990)). Petrillo supervised the City's employees with its approval and had the rank of City Director, which gave her the power to hire and fire City employees. Her statements to Campos constitute direct evidence of discriminatory animus.

C.

The City also argues that it is entitled to a new trial because Campos's attorney was allowed to argue an unpled retaliation claim during closing argument. Specifically, Campos's attorney argued that after Campos resigned, Petrillo

telephoned Campos's new supervisor to criticize Campos and gave directives to YOU staffers to avoid referring youth to Campos's new place of employment. Campos's new position was eventually eliminated.

At the end of Campos's argument the City moved for a mistrial on the grounds that it would unfairly influence the jury to find it liable for acts that occurred when Campos was not its employee. The City also argued that Campos was attempting to introduce a retaliation claim that had never been pled. The district court denied the motion as well as the City's post trial motion for a new trial. Our review is for abuse of discretion. See e.g. Alholm v. American Steamship Co., 144 F.3d 1172, 1181 (8th Cir. 1998) (citation omitted). "A new trial should be granted where the improper conduct of counsel in closing argument 'causes prejudice to the opposing party and unfairly influences a jury's verdict.'" Id. (quoting Pappas v. Middle Earth Condo. Assoc., 963 F.2d 534, 540 (2nd Cir. 1992)).

The City's argument is without merit. With his argument, Campos's attorney intended to demonstrate that Petrillo discriminated against Campos because she was not a Christian. He also argued that Campos was damaged by Petrillo's behavior even after she resigned. He did not suggest that Petrillo's behavior was motivated by a desire to retaliate against her for filing a charge of religious discrimination. There is nothing in the record to suggest that these statements prejudiced the City.[7]

D.

Finally, conceding that Campos, as a prevailing party, is entitled to an attorney's fee award, see 42 U.S.C. § 2000e-5(k) (1994), the City argues that the

---

[7]On appeal, the City also argues that the district court allowed Campos to introduce irrelevant and unfairly prejudicial evidence. We have thoroughly reviewed the record and determined that the district court's evidentiary decisions were appropriate.

district court abused its discretion by awarding Campos's attorneys $90,556.20 in fees because they charged excessive rates, and because the law firm of Benson & Associates billed an unreasonable number of hours.[8] We review a district court's award of attorney fees for abuse of discretion. See Webner v. Titan Distrib., Inc., 267 F.3d 828, 838 (8th Cir. 2001).

In the present case, attorney's fees were requested by both the Meyers firm and the Benson firm for 549.35 hours of work. Campos was originally represented by the Meyers firm. This firm was responsible for handling the case from its inception until the filing of motions for summary judgment. The Meyers firm billed a total of 68.75 hours to file the case and to complete virtually all discovery. This work was performed by two attorneys who charged rates of $210 and $130 per hour. In contrast, the Benson firm opposed one motion for summary judgment, and conducted a four-day jury trial. This work was performed by four different attorneys who charged rates of $95, $165, $180, and $250 per hour. For the work associated with these tasks, the Benson firm requested fees for 480.6 hours of work.[9]

The district court thoroughly reviewed the fee requests of both the firms and determined that their hourly rates were not excessive. The district court also concluded that the Benson firm requested fees for an excessive number of billed hours. As such, the district court reduced the Benson firm's initial request for $89,229.59 by approximately 11% and awarded the firm $79,238.70. In our view, it should not take four experienced, highly paid attorneys 480 hours to prepare one summary judgment motion and to prepare for and conduct a four-day trial when all pretrial discovery had been completed. Had we been presented with the fee request of the Benson firm, our reduction would have been greater than that imposed by the

[8]The City does not challenge the hours that were billed by the Meyers firm.

[9]The Benson firm's initial fee request included a 3% reduction in the fees requested by both Arthur Benson and Jamie Lansford.

district court.  Nevertheless, upon careful review of the record and the arguments submitted, we hold that the district court did not abuse its discretion when it imposed the 11% reduction.  We also agree that the rates charged by Campos's attorneys were not excessive.

## III.  CONCLUSION

For the reasons cited above, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.