HEANEY, Circuit Judge,
dissenting.
I would affirm the district court on both the hostile work environment and constructive discharge counts. Thus, I respectfully dissent from the majority’s opinion insofar as it holds that Rolette County Sheriff Tony Sims is entitled to qualified immunity on Brigitte Wright’s claim of constructive discharge.
A plaintiff claiming constructive discharge based on a hostile work environment must make two showings: first, she must show the presence of harassing behavior so pervasive or severe that it altered the plaintiffs working conditions. Pa. State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204 (2004). Second, she must demonstrate that “the abusive working environment became so intolerable that her resignation qualified as a fitting response.” Id.; see also id. at 2351 (“The inquiry is objective: Did working conditions become so intolerable' that a reasonable person in the employee’s position would have felt compelled to resign?”). The district court found both prongs were met, and I agree.
Wright was constructively discharged from her position due to the extreme, harassment-based humiliation she was forced to endure. Sims directed an office in which sexually explicit and offensive conduct was the order of the day. Wright was the sole female employee of that office, and thus regularly found herself as the target of Sims’ lewd behavior and comments. Sims apparently found his own behavior entirely acceptable; prior to Wright’s first formal complaint on April 1, 2002, Sims was of the belief that sexual harassment included physical touching and unwanted advances,[3] but not verbal abuse of a sexual nature. Sims had no formal training on sexual harassment, yet the County policy (which Sims had apparently ignored) clearly prohibited “[ajction, words, jokes or comments based on an individual’s sex,” as well as “[vjerbal abuse of a sexual nature.” (J.A. at 151.)
The context of Wright’s workplace is relevant not only to her hostile work environment claim, but also to her claim of *890 constructive discharge. The majority-finds that the environment was not so pervasively hostile that Wright was forced to quit, because the harassment “all but stopped” once she returned from work following investigation of her complaint. Ante at 9. While Sims’ behavior was slightly better for a time, this does not tell the entire story. Wright returned to work in late July of 2002 after the County concluded that there was no wrongdoing on the part of Sims. This forced Wright to return to an environment that this court has found to be hostile, with no prospect of improvement in Sims’ behavior.
In the factually similar case of Henderson v. Simmons Foods. Inc., 217 F.3d 612 (8th Cir.2000), our court rejected this same argument. In Henderson, the plaintiff was subjected to a hostile work environment stemming from coworkers’ targeted sexual vulgarities and harassment. After the plaintiff complained to her supervisor, the offending coworkers discontinued their verbal harassment. One coworker, however, directed offensive hand gestures at the plaintiff. When the plaintiff complained, her supervisor did nothing further. Eventually, the plaintiff resigned and successfully claimed she was constructively discharged. On appeal, the defendant argued that the verdict on constructive discharge could not stand because the plaintiffs conditions improved after her complaints. We disagreed:
Simmons’s half-hearted responses to Henderson’s complaints, Simmons’s threat against Henderson’s job, Simmons’s poorly conducted investigation, Simmons’s failure to transfer either Henderson or Sanchez [the offending employee], and Simmons’s failure to respond to Sanchez’s lewd gestures toward Henderson certainly demonstrates the existence of an intolerable working environment where an employee essentially is left with no choice other than the termination of her employment.
Id. at 617.
There is nothing of note to distinguish this case from Henderson. When Wright reported Sims’ misconduct to Rolette County State’s Attorney Mary O’Donnell, O’Donnell met the complaint with skepticism and disbelief. When Wright complained to Rolette County Commissioner Eldon Moors about Sims, Moors told her he was sorry, but that “All [the County] can do is control his budget,” and “that’s the way it is.” (Wright Dep. at 127.) Finally, when the County investigated the matter, it used an investigator whose deposition reveals he had no understanding of even basic sexual harassment law. When the investigator’s report concluded that Sims engaged in no wrongdoing with respect to Wright, she was forced to return to the same office, with the same supervisor, without even an acknowledgment that she indeed had been experiencing unlawful sexual harassment.
We would have a different case if the investigation had found that Sims’ conduct toward Wright was objectionable, or if Sims or the County assured Wright that the environment would improve upon her return. That is not the case, however. As the majority notes, the atmosphere was better for Wright when she returned, but not for long. After a relatively short respite, Sims returned to his pre-complaint ways, making sexually explicit comments and using offensive terms in Wright’s presence. As I read the majority opinion, it would require Wright to again complain when Sims engaged in inappropriate behavior upon her return, or to wait until Sims’ conduct escalated to his past benchmarks for impropriety. I would not impose this demand. The investigation conducted at the behest of the County found no violation of the County’s sexual harassment policy, and forced Wright to return *891 to an environment that the district court and this court have found objectively hostile.[4] Even though an employee must generally give the employer an opportunity to correct the problem before resigning, Campos v. City of Blue Springs. Mo., 289 F.3d 546, 550-51 (8th Cir.2002), where “an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge.” Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir.2000); accord Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 356 & n. 5 (8th Cir.1997) (excusing a plaintiffs failure to complain to supervisors about his hostile work environment where they created and condoned the objectionable atmosphere). Whether Sims’ conduct, and correspondingly, the atmosphere for Wright, had improved to the point that her constructive discharge claim fails is clearly a question of fact. Thus, I would affirm the district court’s denial of summary judgment on this matter.

.Even under Sims’ own definition of harassment, some of Sims’ comments would certainly meet his standard. They included: stating he could not pay attention while Wright was talking because he was staring at her breasts, vocalizing his desire for oral sex when Wright recounted a police training program she had completed, and suggesting that he would like to perform oral sex on Wright.

. Inexplicably, the report also discounted Wright’s complaints about Sims' conduct because ”[t]here is no evidence other than that of Ms. Wright that there was ever any complaint made to Sheriff Sims about the teasing, language, or crude jokes." (J.A. at 159.) I am aware of no requirement in the law that a victim of sexual harassment must have their complaints witnessed or joined by others before they are considered legitimate.